# Lavender *v.* Hall.

*Action for Damages by Landlord, against Person removing Crop.*

1. *Action on the case; when landlord may maintain, against person removing crop.*—A landlord may maintain a special action on the case, against a stranger who, having notice of his statutory lien for rent (Code of 1876 § 3467), carries away the crop from the leased premises, and appropriates it to his own use, whereby the landlord loses his rent; and it is no defense to such action, vindictive damages not being claimed, that the defendant did not intend to injure the landlord.

2. *Statute of frauds; executed and executory contracts.*—The statute of frauds, requiring certain contracts to be reduced to writing (Code of 1876, § 2121), applies only to executory contracts; and if the parties to a verbal contract have voluntarily executed it, a stranger can not be heard to question its validity under the statute.

3. *Declarations of third person, not part of res gestæ, nor explanatory of possession.*—The declaration of the sub-tenant from whom the defendant obtained the cotton, made at the time of delivering it, to the effect that it was not raised on the land rented from plaintiff, is not competent evidence for the defendant.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. GEO. H. CRAIG.

This action was brought by R. F. Hall, against William H. Lavender, and was commenced on the 28th January, 1874. The complaint contained but a single count, which averred that, on the 18th October, 1872, the plaintiff leased a certain tract of land to one Carney Crenshaw, for and during the year 1873, for a stipulated rent, payable in cotton; that said Crenshaw failed to pay the rent, or to comply with the stipulations of the contract on his part, and was and is insolvent; that the defendant, "well knowing the premises, and intending to deprive plaintiff of his statutory lien for the rent of said land," on or about the 13th November, 1873, by means unknown to plaintiff, got possession of a large quantity of cotton raised on the lands that year, worth $500, and converted the same to his own use; wherefore plaintiff claims damages, &c. The defendant pleaded, 1st, not guilty; and, 2d, the statute of frauds, averring that the contract between plaintiff and said Carney Crenshaw was not reduced to writing, signed, &c., as required by that statute; and issue was joined on both of these pleas.

[Lavender v. Hall.]

On the trial, as the bill of exceptions states, the plaintiff offered in evidence the contract between himself and Carney Crenshaw, "of which the following is an exact copy, all of it being on one side of a half-sheet of paper."

"Tolson Place, October 8th, 1872.

"On or before the 1st day of November next, I promise to pay & deliver to R. F. Hall at the depot (8) *bails* good cotton, weighing (500) lbs, each, and *bild* a gin-house & screw on the place during the year 1873, or pay (10) *bails* good cotton for the rent of said place for year 1873.

his

"Witness by *R. F. Hall.*          CARNEY X CRENSHAW.

mark.

"And the said Hall is to furnish 130 lbs. nails, and plank to *flower* said gin-house and *wether bord* it up at the ends and sides; that is, said Hall is to pay for the plank and nails. And the undersigned is to have the place (3) years after *bilding* the gin-house, at (8) bails a year, provided *they* pay the rent each year. This October 8th, 1872.

"Witnessed by *S. A. Hall.*          R. F. HALL."

The plaintiff testified, as a witness for himself, "that Carney Crenshaw made his mark to this instrument in his presence, being the same person named therein as payee, and that he wrote his own name thereto as a subscribing witness to said mark." The court allowed the instrument to be read in evidence to the jury, against the objection of the defendant, and he excepted. It was shown that Carney Crenshaw, who died before the trial, employed four squads of laborers in cultivating the land; and defendant, at the request of said Carney, made advances to most of these laborers during the year. Frank Crenshaw, a son of Carney, was the head of one of the squads, and cultivated, in addition to some of the land leased from plaintiff, about twenty-five or thirty acres on an adjoining plantation. All the cotton raised by Frank Crenshaw and his squad was carried up to his house, and there put in a pen. The defendant came to the place, in October, or November, with his wagon, and Frank Crenshaw delivered to him all the cotton then in the pen, and he hauled it away. The defendant testified that, when he took away the cotton, he did not know that any of it had been raised on the "Tolson place;" that he did not know that plaintiff had any claim to it, until they met in the public road some time afterwards, when plaintiff demanded the cotton of him, and showed him the contract with Carney Crenshaw; and that he then told plaintiff the contract was worthless, and that, "if

he got anything out of him, he would have to get it by law." During the examination of the defendant as a witness, his counsel asked him, "What, if anything, did Frank Crenshaw tell you about said cotton in the pen, as to where it was raised, at the time he delivered it to you?" The court sustained an objection to this question, and would not allow it to be asked; to which ruling, also, the defendant excepted.

The defendant requested, the following charges, which were in writing : 1. "That, if the jury believe, from the evidence, that he had no intention of depriving plaintiff of his rent, or of injuring his lien as landlord for said rent, but was informed and believed that plaintiff's rent was only four bales of cotton, and that fully that much cotton had been reserved for its payment, then their verdict must be for the defendant." 2. That the defendant can not be held liable in this action, for selling or appropriating to his own use cotton raised on the 'Tolson place' during the year 1873, unless the evidence satisfies the jury that he knew the cotton was so raised on said place, and that he knew, before he sold it, that it would be necessary to be applied to pay plaintiff's lien for rent." The court refused each of these charges, and the defendant excepted to their refusal.

All the rulings of the court to which, as above stated, exceptions were reserved by defendant, are now assigned as error.

JAS. E. WEBB, for appellant.

GARRETT & WALKER, contra.

MANNING, J.—Hall, by an agreement with one Carney Crenshaw, leased tillable land to the latter, in October, 1872, for and during the year 1873; for which Crenshaw was to pay, as rent, ten bales of cotton, unless he should put up a ginhouse and screw on the premises, during that year; which if he should do, he was to pay for rent only eight bales of cotton for said year 1873. He was likewise to have the land for the like rent of eight bales a year, for three years more, if punctual in paying the rent. This agreement was reduced to writing, which set forth, in the beginning of it, the contract for the year 1873; to which was signed the name of Carney Crenshaw, and a cross mark between the words "his mark," and also the name of plaintiff, Hall, as subscribing witness thereto. The writing was then continued on the same half-sheet of paper, and set forth the contract on the part of Hall to furnish nails and plank for the flooring and weatherboarding of the gin-house, and to renew the lease of the

land, for three years more, on the terms above mentioned; and this part was signed by Hall, and attested by S. A. Hall.

Carney Crenshaw had the land cultivated during the year 1873, by four squads of hands; for three of which appellant, Lavender, made advances during the same time, for which he was entitled to be paid. Of one of these squads of laborers, Frank Crenshaw, son of Carney, was the foreman; and from him Lavender got some of the cotton made by his squad, to be appropriated to payment for the advances he had made. Hall, the landlord, to whom three bales of cotton were still due for the rent of 1873, demanded them of Lavender, who refused to surrender any of the cotton he had received, but sold and disposed of it for his own use. Carney Crenshaw being insolvent, this action on the case was brought by Hall, the landlord, against Lavender, for damages.

1. A landlord, being by statute entitled to a lien on the crops made by his tenant, for the payment of the rent due from the latter, may have an action against a third person, who carries away such crops from the leased premises, and appropriates them to his own use, whereby the landlord is deprived of his rent.—*Hussey, adm'r v. Peebles*, 53 Ala. 432.

2. Hall having demised the land to Crenshaw, and he having had the occupation and use of it in making crops thereon, during the year 1873, the contract was executed for that period;—and the question whether it was in writing, signed by the parties, according to the statute of frauds, does not arise. Conceding that the attestation of Hall to Crenshaw's signature, to a contract with Hall himself, is not sufficient to make that signature by mark valid; yet, the statute of frauds avoids executory, not executed contracts. Browne on Stat. Frauds, §§ 116, 117, and cases there cited. And in a case like the present, "it is not for a mere stranger to a contract, as is the defendant to the contract between plaintiff and his tenants, to question its validity, because it is offensive to the statute of frauds. The parties may elect to treat it as valid, and to perform it. If they should, others can not avail themselves of an objection to the contract which they have waived."—*Gafford v. Stearns*, 51 Ala. 444; *Waters v. Powers*, 20 Eng. L. & Eq. 410. Hence, there was no error in permitting the writing, to which the landlord and tenant assented, as expressing the terms of their executed agreement, whether signed or not, to be read to the jury, to show what those terms were, in a suit between one of them and a third person.—*Rainey v. Capps*, 22 Ala. 288.

3. What Frank Crenshaw said to appellant, when the lat-

ter got the cotton in controversy, about the place on which it was raised, was not admissible as evidence to the jury. It can not be suffered that the rights of parties shall depend on such declarations of third persons. And the question designed to elicit such declarations was properly ruled out.

Nor was there any error in refusing to give the written charges asked on behalf of the defendant. The liability of one sued, for the damage produced by his wrongful act to the plaintiff, is not precluded by the circumstance that he did not intend to do the plaintiff an injury. There is no pretense of a claim in this cause to smart money for malicious conduct on the part of defendant.

The charge given to the jury, on their return for further instructions, is free from error. There was evidence tending·to show that it was not Hall's fault that the nails and lumber mentioned in the contract were not furnished, but Carney Crenshaw's in not applying for them, and in willfully declining to complete the buildings he was to erect.

Let the judgment of the Circuit Court be affirmed.