Colonial Bank brought this declaratory-judgment action to quiet title to a tract of land in Lauderdale County and to resolve the competing claim of Bradley Outdoor, Inc., to a part of that tract. The trial court entered a summary judgment for Colonial Bank. We affirm.
 I. Facts and Procedural History
From 1950 to 1984, Ellen Johnson and her husband Beman Johnson were in uninterrupted possession of the tract of land that is the subject of the dispute ("the tract"). The tract includes a 175-foot-wide rectangular strip ("the strip") that runs along the tract's eastern boundary and is subject to a utility easement.[2] In 1984, Beman executed a deed conveying his interest in the tract, except as to the strip, to Ellen. Ellen recorded the deed on January 30, 1985.
Beman died on March 15, 1985. Ellen continued in possession of the tract — including the strip — until at least 1996, when she recorded in the Probate Court of Lauderdale County an "Affidavit in Aid of Title." The affidavit stated that the "intention" of the language excepting the strip from the conveyance in the 1984 deed was solely to denote that the strip was subject to the utility easement. Ellen also stated that she had been in actual possession of the tract, including the strip, for more than 10 years (from 1985 to 1996); that she had paid taxes on the tract, including the strip, throughout that period; and that no other person had paid taxes or challenged her title to the tract.
On May 1, 2002, Colonial Bank was awarded a judgment against Ellen in the Lauderdale Circuit Court. The tract was sold at a judicial sale to satisfy the judgment, and Colonial Bank bought it at auction on May 21, 2004. On June 28, 2004, the Lauderdale County sheriff issued a sheriffs deed to the tract in favor of Colonial Bank. Sometime in 2004, Colonial Bank became aware that Bradley Outdoor claimed an interest in the strip.
In 2002, Ellen's son, Paul N. Johnson, had filed for bankruptcy in the United States District Court for the Northern District of Alabama. In that bankruptcy proceeding, the bankruptcy court concluded that Paul owned the strip and ordered it sold to fund the bankruptcy estate. Bradley Outdoor was the high bidder and, on August 27, 2004, the bankruptcy trustee *Page 361 
issued a deed purporting to convey the strip to Bradley Outdoor.
Once it became aware that Bradley Out-door was claiming an ownership interest in the strip, Colonial Bank filed a declaratory-judgment action in the Lauderdale Circuit Court, asking the court to declare it the owner of the tract, including the strip. On October 25, 2004, Colonial Bank moved for a summary judgment. The circuit court granted the motion on January 4, 2005, stating:
 "Colonial Bank's claim of ownership of the real estate which is the subject of the complaint in this case . . . is derived from a chain of title prior to and passing to [Beman] Johnson and Ellen Johnson by a deed from L.P. Odem and wife C.V. Odem dated May 22, 1950 recorded in Book 428 at pages 594-598 in the Records of the Probate Judge of Lauderdale County, Alabama (which is here[in]after called Probate Judge's Records), and then passing to Ellen Johnson by a deed from [Beman] L. Johnson dated December 4, 1984 recorded in Volume 1244 at Pages 50-55 in the Probate Judge's Records. Ellen Johnson's title to THE PROPERTY was further established by the facts contained in her Affidavit In Aid of Title acknowledged on February 16, 1996 which is recorded in Fiche 96-66 at Frames 17 and 18 in the Probate Judge's Records. Ellen Johnson's interest in THE PROPERTY was acquired by Colonial Bank by virtue of an execution sale by the Lauderdale County, Alabama, Sheriff on June 28, 2004 as evidenced by the Sheriffs Deed dated June 28, 2004 and recorded in RLPY 2004 39405 39406 in the Probate Judge's Records.
 "The claim of interest in THE PROPERTY by Bradley Outdoor, Inc. is asserted in this case as through the owner-ship, if any, of Paul N. Johnson which Bradley Outdoor, Inc. supposedly acquired by a deed from Tazewell Shepard, Trustee in Bankruptcy of the Estate of Paul N. Johnson and Jawanda Johnson. This deed was issued pursuant to an order by the Bankruptcy Court dated May 28, 2004 which said deed has not been recorded. The Quit Claim deed from Freada Nichols, Leon Nichols, [Xenophon] Nichols and Cleo Woods dated August 26, 1999 to Paul N. Johnson recorded in Fiche 0099-521 01 in the Probate Judge's Records created no interest in Paul N. Johnson which could have been conveyed by him or the Trustee in bankruptcy. . . .
 "It is therefore more specifically ORDERED, ADJUDGED, and DECREED that Colonial Bank is declared the owner of the real estate . . . subject to the rights of Tennessee Valley Authority for a utility easement."
(Capitalization in original.)
 II. Analysis
A party is entitled to a summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The Court reviews a summary judgment de novo, subject to the caveat that it must review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. University of SouthAlabama v. Progressive Ins. Co., 904 So.2d 1242, 1246 (Ala. 2004); and Southeast Cancer Network, P.C. v. DCH HealthcareAuth., Inc., 869 So.2d 452, 456 (Ala. 2003).
On appeal, Bradley Outdoor does not contest the validity of the execution on the judgment in favor of Colonial Bank or of the sheriffs sale of the tract. Instead, it argues that there are disputed issues of fact as to whether Ellen had title to the *Page 362 
strip, and, therefore, whether the sheriffs deed could have conveyed title to the strip to Colonial Bank. Bradley Outdoor also argues that there are disputed issues of material fact as to whether Paul established title to the strip by virtue of the August 26, 1999, quitclaim deed referenced in the trial court's order. We do not agree that there are genuine issues of material fact as to the ownership of the strip.
Colonial Bank presented evidence of an unbroken chain of title to the tract, beginning with a G.P. Nicolopoolos and Freada Nicolopoolos and dating back to 1927. This chain of title leads directly to Beman and Ellen's purchase of the tract in 1950 and to Beman's conveyance of the tract, minus the strip, to Ellen in 1984. This evidence establishes that as of 1984 Ellen and Beman owned the strip, and Ellen alone had title to the rest of the tract.
The affidavit Ellen recorded in the Probate Court of Lauderdale County in 1996 states:
 "2. I have been in actual peaceable possession of the [tract], either individually or through Beman L. Johnson, my husband, continuously since 1950;
 "3. The [tract] has been assessed in my or my husband's name since 1950, and I have paid the ad valorem taxes on the [tract] for the whole of such period, with no other person paying such taxes during any portion of such time. . . .
 "5. Based upon the foregoing, I, or persons I am claiming through, have been in actual, peaceable possession of the [tract] for a period of more than ten (10) consecutive years and have paid taxes on the whole of it for such time, with no other person paying such taxes, and no person challenging my ownership of the [tract] during such time."
These facts show that Ellen was in actual, exclusive, continuous, open, and hostile possession of the tract — including the strip — from Beman's death in 1985 until the filing of her affidavit in 1996. The affidavit is also evidence indicating that Ellen "listed the land for taxation in the proper county for 10 years prior to the commencement of the action. . . ." § 6-5-200(a)(2), Ala. Code 1975. This establishes the elements of adverse possession and shows that Ellen had title to the tract, including the strip, in 1996, by virtue of adverse possession. Brown v. Brown,361 So.2d 1038 (Ala. 1978) (describing the elements of adverse possession).
In an effort to show that there are disputed issues of fact, Bradley Outdoor offered a 1999 quitclaim deed that purported to convey the strip from Freada Nichols, Leon Nichols, Xenophon Nichols, and Cleo Woods to Paul Johnson. Bradley Outdoor argues that title "remained in the Nicolopoolos name" until 1999, when the quitclaim deed purportedly conveyed the strip to Paul. Although it appears that Bradley Outdoor believes that the "Freada Nichols" listed as a grantor in the 1999 quitclaim deed is the same person as Freada Nicolopoolos, it has presented no evidence to support this belief. In fact, the record is devoid of any evidence identifying the grantors in the 1999 quitclaim deed or describing the basis for their claim of title to the strip. The 1999 deed thus fails to create any genuine issue of material fact.
Bradley Outdoor also offered an affidavit by Paul and a second affidavit by Ellen. Paul's affidavit referenced the 1999 quitclaim deed and stated: "I was the owner of the property in dispute. . . . I paid taxes on this tract as part of a tract to the East which was owned by a trust for my mother."[3] This affidavit also fails to *Page 363 
create a genuine issue of material fact. The statement that Paul "was the owner of the property" is a legal conclusion, not a statement of fact. In addition, Paul does not statewhen he paid taxes on the strip. As a result, Paul's affidavit fails to contradict any of the facts of Ellen's 1996 affidavit, including the statement that she had paid taxes on the strip from 1985 to 1996.
Bradley Outdoor also offered as evidence a second affidavit by Ellen. This second affidavit began by referencing Ellen's 1996 affidavit and then stated:
 "[The 1996 affidavit] was given in conjunction with the purchase of certain land in Lauderdale County when the land was bought to build the `Logan's Road House Restaurant' on Highway 72 East.
 "Although I signed this affidavit, I did not prepare it, nor did I assist in its preparation. In fact, it is my understanding that it was prepared by a firm in Nashville, Tennessee, and I did not communicate with anyone in its preparation.
 "I signed this affidavit entirely to facilitate the sale of the `Logan's Roadhouse' property and not in contemplation that it would affect the property that is the subject of the lawsuit now pending in Case Number CV-2004-371 in the Circuit Court of Lauderdale County, Alabama.
 "In fact, the property in dispute in said case is not, and was not owned by me. It was owned by a Trust which my son Paul Johnson administered. The property in dispute in said Civil Action was leased by my son, Paul N. Johnson to Phoenix Structures Service, Inc. d/b/a Trinity Outdoor Advertising for use as a location for a billboard sign for a few years."
Bradley Outdoor argues that this second affidavit, in which Ellen disclaimed ownership of the strip, created a genuine issue of material fact as to whether she had title to the strip and was thus able to convey that title to Colonial Bank.
The apparent contradiction between the 1996 affidavit and the second affidavit is certainly curious. However, the second affidavit fails to state any facts that contradict those of the 1996 affidavit. Ellen's motive for executing and recording the 1996 affidavit is irrelevant, as is whether she contemplated that that affidavit would affect any subsequent actions involving the tract. Similarly, although Ellen's statement that the "property in dispute . . . is not, and was not owned by me" might seem to create a genuine issue of fact as to whether she had title to the strip, it does not. The question of who had title is one of law, not of fact. Although Ellen may now believe that she never had title to the strip, her belief is irrelevant. Nothing in Ellen's second affidavit contradicts the facts of her 1996 affidavit, and those facts established that she held title to the strip, which she had acquired by adverse possession.[4]
 III. Conclusion
The evidence shows that Ellen had title to the tract, including the strip, as of 1996. The sheriffs sale conveyed the tract, including the strip, to Colonial Bank, and Colonial Bank was entitled as a matter of law to a judgment declaring that it has title to the tract, including the strip. The *Page 364 
judgment of the trial court is therefore affirmed.
AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[2] The Johnsons acquired the tract by a warranty deed dated May 22, 1950. The deed excepted the strip from the warranties but concluded by quitclaiming the strip to the Johnsons. The deed was recorded on May 23, 1950.
[3] The record shows that such a trust exists and that it owned property to the east of the tract. However, the property owned by the trust is distinct from the tract.
[4] We note that Beman's will devised all real property owned by him at the time of his death to Ellen. Because of our resolution of this appeal on the adverse-possession issue, we need not determine the effect of that devise.